1    Dale K. Galipo, Esq. (SBN 144074)
     E-mail: dalegalipo@yahoo.com
2    Thomas C. Seabaugh, Esq. (SBN 272458)
     E-mail: tseabaugh@galipolaw.com
3    LAW OFFICES OF DALE K. GALIPO
     21800 Burbank Boulevard, Suite 310
4    Woodland Hills, California 91367
     Telephone: (818) 347-3333
5    Facsimile: (818) 347-4118

6    Sonia M. Mercado (SBN 117069)
     SONIA MERCADO & ASSOCIATES
7    5711 W. Slauson Ave., Suite 100
     Culver City, CA 90230
8    Tel: 310.410.2981; Fax: 310.410.2957
     E-mail: soniamer2002@yahoo.com

9

10    Attorneys for Plaintiff K.C.R.



FILED
CLERK, U.S. DISTRICT COURT

JUN - 3 2013

CENTRAL DISTRICT OF CALIFORNIA
BY           DEPUTY

11           UNITED STATES DISTRICT COURT

12        CENTRAL DISTRICT OF CALIFORNIA

13 | K.C.R., a minor child, individually and    Case No. CV 13-03806 PSG (SS)
as successor in interest to decedent
14 | Kenneth Rivera III, by and through her    **COMPLAINT FOR DAMAGES**
natural mother Jessie Malpartida Wong;

15           Plaintiff,

16           vs.

17 | COUNTY OF LOS ANGELES;
SHERIFF LEROY BACA, ;
18 | UNDERSHERIFF PAUL TANAKA;
DOES 1 THROUGH 10, INCLUSIVE.
19
          Defendants.
20



2013 MAY 29  AM 11: 19
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

1. Unreasonable Search and Seizure—
   Detention and Arrest (42 U.S.C. §
   1983);
2. Unreasonable Search and Seizure
   and Due Process—Excessive Force
   and Denial of Medical Care (42
   U.S.C. § 1983);
3. Substantive Due Process (42 U.S.C.
   § 1983);
4. Supervisory Liability (42 U.S.C. §
   1983);
5. Municipal Liability for
   Unconstitutional Custom, Practice,
   or Policy (42 U.S.C. § 1983);
6. Battery (Wrongful Death);
7. Negligence (Wrongful Death);
8. Violation of Bane Act (Cal. Civil
   Code § 52.1);
9. Violation of Cal. Const., Art 1, §
   13.

**DEMAND FOR JURY TRIAL**

21

22

23

24

25

26

27

28

COPY

LODGED

## COMPLAINT FOR DAMAGES

K.C.R., a minor child, individually and as successor in interest to decedent Kenneth Rivera III, by and through her natural mother Jessie Malpartida Wong as her guardian ad litem., in the complaint against defendants COUNTY OF LOS ANGELES ("COUNTY" or "County"); SHERIFF LEROY BACA ("BACA"); UNDERSHERIFF PAUL TANAKA ("TANAKA"); and DOES 1 THROUGH 10, INCLUSIVE (collectively "Defendants"), allege as follows:

## INTRODUCTION

1.     This civil rights action seeks compensatory and punitive damages from individual deputy sheriffs, from senior sheriff's department officials, and from the County of Los Angeles for violations of fundamental rights under the United States Constitution and state law in connection with the brutal police killing of Kenneth Rivera III on June 21, 2012.

2.     Kenneth Rivera III is but one of many recent victims of a disturbing trend featuring unarmed citizens shot dead by the County's sheriffs.  Rather than take measures to address the staggering epidemic of such shootings, such as holding the culprits accountable, local authorities have fomented a culture pursuant to which individual officers and their supervisors look the other way when such shootings take place and when the officers involved fabricate stories that purport to justify the shootings.

3.     The policies and customs behind shootings of unarmed civilians such as Kenneth Rivera III are fundamentally unconstitutional and constitute a menace of major proportions to the public.  Accordingly, insofar as Plaintiff herein seeks by means of this civil rights action to hold accountable those responsible for the killing

-2-

1    of Kenneth Rivera III and to challenge the County's unconstitutional policies and

2    practices, this civil rights action is firmly in the public interest.

3                                    **PARTIES**

4          4.     At all relevant times, Kenneth Rivera III ("decedent") was an

5    individual residing in County of Los Angeles, California.

6          5.     K.C.R., a minor, is decedent's natural child and successor in interest

7    pursuant to CAL.CODE.CIV.P. § 377.32.  JESSIE MALPARTIDA WONG is her

8    natural mother and guardian ad litem.  K.C.R. and JESSIE MALPARTIDA WONG

9    reside in the County of Los Angeles.

10         6.     Defendant COUNTY is a chartered subdivision of the State of

11   California with the capacity to sue and be sued.  Defendant COUNTY is responsible

12   for the actions, omissions, policies, procedures, practices and customs of its various

13   agents and agencies. At all times relevant to the facts alleged herein, Defendant

14   COUNTY was responsible for assuring that the actions, omissions, policies,

15   procedures, practices and customs of its employees complied with the laws and the

16   Constitutions of the United States and of the State of California.

17         7.     At all relevant times, Defendant Sheriff LEROY BACA was the Sheriff

18   of the Los Angeles Sheriff's Department ("LASD").  He is sued in his individual

19   and personal capacity.  At all relevant times, Defendant Undersheriff PAUL

20   TANAKA was the Undersheriff of the LASD and an employee of COUNTY.

21   BACA and TANAKA were charged by law with the administration of defendant

22   LASD's patrol division and for the supervision, training and hiring of persons

23   working within said LASD, including peace officers and specifically including

24   defendants DOES 1 THROUGH 10, inclusive.

25         8.     Defendant DOE 1 is a deputy sheriff working for the LASD. Defendant

26   DOE 1 shot and killed decedent.

27

28                                      -3-
                                                        COMPLAINT FOR DAMAGES

9.     At all relevant times, each of DOES 1 THROUGH 10 was an employee of the LASD.  At all times relevant herein, each of DOES 1 THROUGH 10 was an employee and/or agent of defendant COUNTY and he or she acted under color of law, to wit, under the color of the statutes, ordinances, regulations, policies, customs, and usages of Defendant COUNTY and the LASD, as well as under the color of the statutes and regulations of the State of California.  At all relevant times, each of DOES 1 THROUGH 10 was acting within his or her capacity as an employee, agent, representative and/or servant of COUNTY.

10.     Defendants BACA, TANAKA, and DOES 1 THROUGH 10 are sued in their individual capacities for damages only.

11.     On information and belief, at all relevant times, Defendants BACA, TANAKA, and DOES 1 THROUGH 10, inclusive, were residents of County of Los Angeles, California.

12.     At all relevant times, DOES 1 THROUGH 10, inclusive, were duly authorized employees and agents of COUNTY, who were acting under color of law within the course and scope of their respective duties as police officers and with the complete authority and ratification of their principal, Defendant COUNTY.

13.     At all relevant times, defendants BACA, TANAKA, and DOES 1 THROUGH 10, inclusive, were duly appointed officers and/or employees or agents of COUNTY, subject to oversight and supervision by COUNTY's elected and non-elected officials.

14.     In doing the acts and failing and omitting to act as hereinafter described, defendants BACA, TANAKA, and DOES 1 THROUGH 10 were acting on the implied and actual permission and consent of COUNTY.

15.     The true names of defendants DOES 1 THROUGH 10, inclusive, are unknown to Plaintiff, who therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to show the true names and

-4-

COMPLAINT FOR DAMAGES

1   capacities of these defendants when they have been ascertained.  Each of the

2   fictitious named defendants is responsible in some manner for the conduct and

3   liabilities alleged herein.

4         16.    On November 28, 2012, Plaintiff filed comprehensive and timely

5   claims for damages against COUNTY pursuant to applicable sections of the

6   California Government Code.

7         17.    On December 4, 2013, COUNTY served a "Notice of Denial" of claim

8   upon Plaintiff.

9         18.    Each of the Defendants caused and is responsible for the unlawful

10  conduct and resulting by, inter alia, personally participating in the conduct, or acting

11  jointly and in concert with others who did so; by authorizing, acquiescing or failing

12  to take action to prevent the unlawful conduct; by promulgating policies and

13  procedures pursuant to which the unlawful conduct occurred; by failing and

14  refusing, with deliberate indifference to Plaintiff and decedent's rights, to initiate

15  and maintain adequate supervision and/or training; and, by ratifying the unlawful

16  conduct that occurred by agents and peace officers under their direction and control.

17  Whenever and wherever reference is made in this Complaint to any act by a

18  Defendant, such allegation and reference shall also be deemed to mean the acts and

19  failures to act of each Defendant individually, jointly and severally.  They are sued

20  in their individual and official capacities and in some manner are responsible for the

21  acts and omissions alleged herein. Plaintiff will ask leave of this Court to amend this

22  Complaint to allege such name and responsibility when that information is

23  ascertained.  Each of Defendants is the agent of the other.

24        19.    On information and belief, Decedent's other potential successors in

25  interest including K.R., decedent's other minor child, and Kenneth Rivera, Jr.,

26  decedent's father are represented by separate counsel.  Upon information and belief,

27  these other successors-in-interest intend to file separate complaints.   Accordingly,

28  _____

-5-

these other potential successors-in-interest are not joined at this time.  Genesis
Amanda Feliciano is decedent's mother, and is another potential successor in
interest.

## JURISDICTION AND VENUE

20.   This civil action is brought for the redress of alleged deprivations of
constitutional rights as protected by 42 U.S.C. §§ 1983, 1985, 1986, 1988, the
Fourth and Fourteenth Amendments of the United States Constitution, and the
California Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331, 1343, and
1367.

21.   Venue is proper in this Court under 28 U.S.C. § 1391(b), because
defendants reside in, and all incidents, events, and occurrences giving rise to this
action occurred in, the County of Los Angeles, California.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

22.   Plaintiff repeats and re-alleges each and every allegation in
paragraphs 1 through 21 of this Complaint with the same force and effect as if fully
set forth herein.

23.   Decedent was born on March 14, 1985, and was 27 years old at the
time of his death.

24.   On June 21, 2012, during daylight hours and near mid-day, near the
entrance of the La Siesta Motel located at 11585 Atlantic Avenue, Lynwood,
California 92062, decedent sustained injuries, pain and suffering, and death when he
was shot by DOE 1, an on-duty Sheriff's Deputy, who was acting under color of law
and as an employee of LASD.  The decedent was visibly unarmed and at the time of
the shooting and posed no imminent threat of death or serious bodily injury to any
person.

-6-

25.     Upon information and belief, at the time he was shot decedent was shirtless and had nothing in his hands.  Moreover, both of his arms were raised in a universal sign of surrender.  There was no crime in progress.  Sheriff Deputy DOE 1 was inside her patrol car and decedent posed no imminent threat of death or serious bodily injury to her.  A second LASD patrol car was nearby containing other LASD deputy sheriffs.

26.     Upon information and belief, immediately prior to the shooting decedent walked out of the hotel area towards the sidewalk with his hands up in a gesture of surrender.  Decedent stated words to the effect that "I'm the one you're looking for."

27.     Defendant DOE 1 did not warn decedent that she was about to shoot decedent.

28.     Defendant DOE 1 shot decedent repeatedly, including multiple shots that struck decedent in the back.

29.     Upon information and belief, after being shot decedent collapsed onto the ground.  Decedent was immobile on the pavement, bleeding profusely and in obvious and critical need immediate emergency medical care and treatment.  Instead of immediately providing or facilitating emergency medical care and treatment, decedent was handcuffed.  Defendant DOES 1 THROUGH 10, inclusive, ignored decedent's need for immediate medical care, and left him bleeding and handcuffed on the pavement.  Defendant DOES 1 THROUGH 10, inclusive did not timely summon medical care or permit medical personnel to treat decedent.  The delay of medical care to decedent caused decedent extreme physical and emotional pain and suffering, and was a contributing cause of decedent's death.

30.     Upon information and belief, Defendant DOES 1 THROUGH 10, inclusive, participated in the attempted cover up of this shooting.  DOES 1 THROUGH 10, inclusive, intimidated, harassed and caused fear to percipient

-7-

1   witnesses.  DOES 1 THROUGH 10 wrongfully seized video camera footage of this

2   shooting from witnesses and destroyed evidence.

3        31.    Prior to and at the time of the shooting, decedent was unarmed and

4   posed no imminent threat of death or serious physical injury to DOE 1 or any other

5   person.  The use of deadly force was excessive and objectively unreasonable under

6   the circumstances.

7

8   **<u>FIRST CLAIM FOR RELIEF</u>**

9   **Unreasonable Search and Seizure—Detention and Arrest (42 U.S.C. § 1983)**

10  (Against DOES 1 THROUGH 10, inclusive)

11       32.    Plaintiff repeats and re-alleges each and every allegation in

12  paragraphs 1 through 31 of this Complaint with the same force and effect as if fully

13  set forth herein.

14       33.    When DOE 1 shot decedent and when DOES 1 THROUGH 10,

15  inclusive placed decedent in handcuffs, they violated decedent's right to be secure in

16  his person against unreasonable searches and seizures as guaranteed to the decedent

17  under the Fourth Amendment to the United States Constitution and applied to state

18  actors by the Fourteenth Amendment.

19       34.    As a result of their misconduct, Defendants DOES 1 THROUGH 10,

20  inclusive are liable for decedent's injuries, either because they were integral

21  participants in the wrongful detention and arrest, or because they failed to intervene

22  to prevent these violations.  Plaintiff has also been deprived of the life-long love,

23  companionship, comfort, support, society, care and sustenance of decedent, and will

24  continue to be so deprived for the remainder of her natural lives.  Plaintiff also

25  claims loss of financial support.

26       35.    Defendants DOES 1 THROUGH 10, inclusive detained decedent

27  without reasonable suspicion and arrested him without probable cause.

28

-8-

36.     The conduct of Defendants DOES 1 THROUGH 10, inclusive was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to Defendants DOES 1 THROUGH 10, inclusive.

## SECOND CLAIM FOR RELIEF

### Unreasonable Search and Seizure and Due Process—Excessive Force and Denial of Medical Care (42 U.S.C. § 1983)

(Against DOES 1 THROUGH 10, inclusive)

37.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 36 of this Complaint with the same force and effect as if fully set forth herein.

38.     The unjustified shooting of decedent by Defendant DOE 1 and other unknown doe defendants deprived decedent of his right to be secure in his person against unreasonable searches and seizures as guaranteed to decedent under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

39.     By virtue of their misconduct, defendants DOES 1 THROUGH 10, inclusive are liable for decedent's injuries, either because these defendants were integral participants in the use of excessive force, or because they failed to intervene to prevent these violations.

40.     Defendants DOES 1 THROUGH 10, inclusive knew that failure to provide timely medical treatment to decedent could result in further significant injury or the unnecessary and wanton infliction of pain, but nevertheless disregarded his serious medical needs, causing him great bodily harm, physical and emotional pain and suffering, and death.

-9-

41.     This use of deadly force was excessive and unreasonable under the circumstances.  Defendants' actions thus deprived DECEDENT of his right to be free from unreasonable searches and seizures under the Fourth Amendment and applied to state actors by the Fourteenth Amendment.   Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of decedent, and will continue to be so deprived for the remainder of her natural lives.  Plaintiff also claims loss of financial support.

42.     The conduct of Defendants DOES 1 THROUGH 10, inclusive was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and therefore warrants the imposition of exemplary and punitive damages as to DOES 1 THROUGH 10, inclusive.

## THIRD CLAIM FOR RELIEF

### Substantive Due Process (42 U.S.C. § 1983)

(Against Defendants DOES 1 THROUGH 10, inclusive)

43.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 42 of this Complaint with the same force and effect as if fully set forth herein.

44.     Decedent had a cognizable interest under the Due Process Clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that deprive them of life, liberty, or property in such a manner as to shock the conscience, including but not limited to, unwarranted state interference with Plaintiff's right to a familial relationship with decedent.

45.     Defendants DOES 1 THROUGH 10, inclusive, acting under color of state law, thus violated the Fourteenth and Amendment rights of Plaintiff to be free from unwarranted interference with her familial relationship with decedent.

-10-

COMPLAINT FOR DAMAGES

46.   The aforementioned actions of Defendants DOES 1 THROUGH 10, inclusive, along with other undiscovered conduct, shock the conscience, in that they acted with deliberate indifference to the constitutional rights of decedent and Plaintiff, and with purpose to harm unrelated to any legitimate law enforcement objective.

47.   Defendants DOES 1 THROUGH 10, inclusive, acting under color of state law, thus violated the Fourteenth Amendment rights of decedent and Plaintiff.

48.   As a direct and proximate cause of the acts of Defendants DOES 1 THROUGH 10, inclusive, decedent experienced severe pain and suffering and lost his life and earning capacity.  Plaintiff suffered extreme and severe mental anguish and pain and has been injured in mind and body.  Plaintiff has also been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of decedent, and will continue to be so deprived for the remainder of her natural lives. Plaintiff also claims loss of financial support.

49.   The conduct of Defendants DOES 1 THROUGH 10, inclusive was willful, wanton, malicious, and done with reckless disregard for the rights and safety of decedent and Plaintiff and therefore warrants the imposition of exemplary and punitive damages as to DOES 1 THROUGH 10, inclusive.

## FOURTH CLAIM FOR RELIEF

### Supervisory Liability (42 U.S.C. § 1983)

(Against Defendants BACA, TANAKA, and DOES 1 THROUGH 10)

50.   Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 49 of this Complaint with the same force and effect as if fully set forth herein.

51.   The LASD has a history of criminal and violent gangs or "cliques" forming among sheriff's deputies, including at the Century Station (formerly known

-11-

as the Lynwood Station). Those criminal and violent gangs that have been exposed thus far include the "Little Devils," the "Vikings," the "Regulators," the "3000 Boys," the "2000 Boys," the "Jump Out Boys," and others.  These criminal and violent gangs self-identify through logos and tattoos. These criminal and violent gangs, and a corresponding violent and criminal subculture, within LASD has contributed to acts of excessive force, insubordination, and a "code of silence" on patrol and in the jails for many years. Within these gangs, getting away with the use of excessive and unreasonable force – including deadly force – increases a deputy's status in the gang.

52.     Problems associated with deputy gangs have been known to BACA, TANAKA, and DOES 1 THROUGH 10, inclusive since at least 1992.  The 1992 Kolts Commission was created by the County after LASD shootings of unarmed citizens provoked popular protests and demonstrations. The Board of Supervisors appointed James G. Kolts, a highly respected retired superior court judge and former prosecutor to investigate the allegations of pervasive incidence of excessive force among LASD deputies.  The subsequent report ("the Kolts Report") described problems associated with the "Vikings" gang at the Lynwood Station that had resulted in civil liability and an injunction. The Kolts Report described the "Vikings" gang as comprised of "an inner group of deputies with peculiar and unique hard attitudes" that "manifested themselves in the form of excessive force and disciplinary problems between deputies and their supervisors."  The Kolts Report recommended that the LASD "identify, root out, and punish severely any lingering gang-like behavior by its deputies," and that "unit commanders aggressively break up deputy groups which manifest any of the conduct which signifies gang-related activity."

53.     Defendants to BACA, TANAKA, and DOES 1 THROUGH 10, inclusive knew or should have known about the findings of the Kolts Report,

-12-

1   including the above recommendations. Plaintiff is informed and believes and
2   thereupon alleges that notwithstanding these recommendations, BACA and
3   TANAKA have ignored them and instead have been deliberately indifferent to the
4   continued growth of deputy gangs in LASD, including at Century Station.

5          54.     Plaintiff is informed and believes and thereon alleges that Defendant
6   TANAKA participated in the unlawful killing of 21-year-old Hong Pyo Lee in 1988.
7   Defendant TANAKA was one of five deputies who shot Hong Pyo Lee
8   approximately 15 times while he was in a vehicle stopped and cornered at a dead-
9   end street. A Long Beach police officer who witnessed the shooting told
10  investigators he "just observed the sheriffs execute somebody." Plaintiff is
11  informed and believes that as a result of the shooting, Defendant COUNTY paid
12  approximately $1 million in settlement of a wrongful death civil rights action
13  brought by Hong Lee's family.

14         55.     Plaintiff is informed and believes and thereupon alleges that at or near
15  the time of the shooting of Hong Pyo Lee, Defendant TANAKA was a deputy at the
16  Century Station and a member of a criminal and violent deputy gang known as the
17  "Vikings." A federal district court has described the Vikings as "a white-
18  supremacist gang of deputies operating within the Lynwood [Century] substation."
19  In response to a motion for a preliminary injunction, a federal district court found as
20  follows:

21         a.     The actions of many deputies working in the Lynwood sub-
           station are motivated by racial hostility; these deputies regularly
22         disregard the civil rights of individuals they have sworn to protect.
           Many of the incidents which brought about this motion involved a
23         group of Lynwood area deputies who are members of a neo-nazi, white
           supremacist gang - the Vikings - which exists with the knowledge of
24         departmental policy makers.
           b.     Deputies, who previously worked in the Lynwood sub-station,
25         acknowledge that during the period they were assigned to Lynwood, it
           was clear that many of the deputies and sergeants in Lynwood were out
26         to intimidate and ridicule Blacks and Hispanics.

27

28                                        -13-
                                                        COMPLAINT FOR DAMAGES

c.    There is a direct link between departmental policy makers, who tacitly authorize deputies' unconstitutional behavior, and the injuries suffered by the plaintiffs . . .
d.    As a result of the terrorist-type tactics of deputies working in Lynwood, and the policy makers' tolerance of such tactics, plaintiffs are being irreparably injured - both physically and mentally - and their civil rights are being violated . . .
e.    The evidence presented by the plaintiffs is more credible than that presented by the defendants . . .

56.    Plaintiff is informed and believes and thereupon alleges that at or near the time of the shooting of Hong Pyo Lee, Defendant TANAKA, in order to affirm his dedication, allegiance and acceptance of the core values of the criminal and violent deputy gang known as the "Vikings," intentionally got himself tattooed with the insignia of the gang. Further, Defendant TANAKA he continued to wear the "Vikings" tattoo at the time he made speeches (infra) to Century-Lynwood Station deputies, some of whom were members of the criminal and violent deputy gang known as the "Regulators." Finally, Defendant TANAKA continues to the present to sport the "Vikings" deputy gang tattoo as a symbol of his allegiance to the criminal and violent "Vikings" gang.  At all relevant times, Defendant TANAKA sported this tattoo with the knowledge, ratification and acquiescence of BACA.

57.    Plaintiff is informed and believes and thereon alleges that on or before the date that decedent was shot and killed, the "Vikings" gang had merged with, had become known as, or had morphed into the "Regulators" gang at Century Station. Deputies belonging to this criminal and violent gang were encouraged to use excessive force, including deadly force, against citizens.  The use of excessive force, including discharge of firearms and use of deadly force, was celebrated by the members of the Regulators.  With respect to the "Regulators" and "Vikings" gangs, the use of excessive or unreasonable force by a deputy increases a member's status within the gang. The status of a gang member is doubly increased if the force involved is lethal, as well as if the gang member avoids civil or criminal liability for his or her unlawful conduct. This gang-clique deputy culture is tolerated and

-14-

1  condoned by the station's leadership, including BACA and TANAKA.  In this case,
2  DOES 1 THROUGH 10 and TANAKA were associated with, were members of,
3  were associates of, sympathized with, were influenced by, or adopted the principles
4  of the "Regulators" gang.

5         58.    Plaintiff is informed and believes and thereon alleges prior to the
6  shooting of decedent, in a speech delivered by TANAKA to the patrol deputies at
7  Century Station, deputies were encouraged to "function right to the edge of the line"
8  and be very aggressive in using force against citizens.  Plaintiff believes this
9  amounted to direct encouragement of the "Regulators" and "Vikings" gangs, for
10  whom the use of unconstitutional and excessive force is status symbol. This speech
11  facilitated the use of unreasonable and excessive force against decedent in this case.

12         59.    Plaintiff is informed and believes and thereon alleges that on or before
13  the death of decedent, Defendant TANAKA also encouraged the patrol deputies at
14  Century Station (some of whom were or are members of the "Regulators") to
15  "operate in the grey area." Plaintiff contends that this was understood as further
16  encouragement and support for the "Regulators" and "Vikings" gangs, and made
17  more likely the use of unreasonable and excessive force against decedent in this
18  case.

19         60.    Plaintiff is informed and believes and thereon alleges that at Century
20  Station, Defendant TANAKA warned Captains and other supervisors against
21  "putting a case" on deputies within the station who were suspected of using
22  excessive or unreasonable force or otherwise violating state or federal law. In other
23  words, Defendant TANAKA went out of his way to protect and obstruct
24  investigations of deputies, such as those involved in the "Vikings" and "Regulators"
25  gangs (of which Defendant TANAKA was a member or associate), that routinely
26  used excessive or unreasonable force. This in turn made more likely the use of
27  unreasonable and excessive force against decedent in this case.

28
                                           -15-

1    61.    Plaintiff is informed and believes and thereon alleges that at Century

2  Station, Defendant TANAKA also threatened and admonished the Captains and

3  supervisors that he would be "checking on them" and would retaliate against them

4  by "putting a case" on them if they investigated misconduct by deputies. Under the

5  circumstances, this was direct encouragement to the violent and criminal "Vikings"

6  and "Regulators" gangs, and facilitated the use of unreasonable and excessive force

7  against decedent in this case.

8    62.    Plaintiff is informed and believes and thereon alleges that at Century

9  Station, Defendant TANAKA also disparaged the operations and function of the

10  LASD Internal Affairs Bureau, among the functions of which is to investigate

11  misconduct by deputies suspected of violating police standards of performance,

12  including constitutional violations and crimes. Defendant TANAKA also insinuated

13  that the Internal Affairs Bureau should be eliminated.  Under the circumstances, this

14  was further direct encouragement to the violent and criminal "Vikings" and

15  "Regulators" gangs, and facilitated the use of unreasonable and excessive force

16  against decedent in this case.

17    63.    Plaintiff is informed and believes and thereon alleges that prior to the

18  shooting of decedent, the Defendants BACA, TANAKA, and DOES 1 THROUGH

19  10, inclusive was aware of problems of insubordination, excessive use of force, and

20  an internal "code of silence" among LASD deputies. The "code of silence," as it is

21  colloquially known, is the understanding among deputies that misconduct,

22  corruption, crimes, and the excessive use of force will not be reported through the

23  chain of command. The "code of silence" means that peace officers are expected to

24  generate false reports and perjure themselves to cover up the use of excessive force

25  and other misconduct by other officers. The "code of silence" encourages criminal

26  and violent gangs such as the "Vikings" and "Regulators" to commit insubordinate

27  acts, generate false reports, and use excessive or unreasonable force.

28

-16-

1      64.    Plaintiff is informed and believes and thereon alleges that in response
2   to the efforts by some within the LASD to address the growing problem of violent
3   deputy gangs, a group of deputies circumvented the chain of command and
4   complained directly to TANAKA.  In response, TANAKA intentionally disrupted
5   and frustrated efforts to address the problem of violent deputy gangs, excessive
6   force, and the "code of silence" within the LASD.  As part of this counter-effort,
7   Defendant TANAKA held a meeting where he berated and humiliated those
8   supervisors who had attempted to break up criminal and violent gangs among
9   deputies and hold deputies accountable for their misconduct and insubordination.
10  These actions by TANAKA were condoned, ratified, enabled and encouraged by
11  Defendant BACA and DOES 1 THROUGH 10, inclusive. Defendant TANAKA's
12  and BACA's actions and inactions resulted in a breakdown in the chain of command
13  and perpetuated an environment which condoned, ratified and enabled deputy
14  misconduct and use of excessive force.
15      65.    Plaintiff is informed and believes and thereon alleges that Defendant
16  TANAKA's actions and inactions set the stage for a sharp increase in the number of
17  unnecessary use of force incidents, to which BACA and DOES 1 THROUGH 10,
18  inclusive turned a blind eye.
19      66.    As of approximately October 2011, BACA, TANAKA and DOES
20  1Through 10, inclusive were aware or should have been aware that they had a
21  problem on their hands. Some of the incidents leading up to this period include the
22  following:
23              (a)    A Ninth Circuit decision holding that Defendant BACA could be
24                     held personally liable for unconstitutional practices in Defendant
25                     COUNTY's jails;
26              (b)    A series of civil rights settlements and verdicts adverse to
27                     Defendant COUNTY;
28                                          -17-

         (c)    A series of public revelations of corruption, abuse and criminal conduct by local and national news outlets;

         (d)    Investigations by Department of Justice, Department of Civil Rights and the Federal Bureau of Investigation; and

         (e)    A series of public meetings at the County Board of Supervisors, at which a motion was passed to form a Los Angeles County Citizens' Commission on Jail Violence (hereinafter "ACCJV").

67.    Notwithstanding the above, BACA, TANAKA and DOES 11 Through 10, inclusive did not take sufficient steps to correct the problems, leading to the incident in the instant case.

68.    In sum, Plaintiff is informed and believes and thereon alleges that a history of the criminal and violent deputy gangs at the Century Station included, but was not limited to the "Regulators" and the "Vikings" gangs. Defendant TANAKA, a member, associate, sympathizer, or supporter of the "Vikings" gang, encouraged deputies to use excessive or unreasonable force. Defendant TANAKA further admonished captains and supervisors not to investigate possible misconduct by deputies. Defendant TANAKA threatened retaliatory investigations and discipline against captains and supervisors who attempted to investigate deputy misconduct. Defendants BACA, TANAKA and DOES 11 Through 10, inclusive took no effective action to stop, hinder, or investigate the conduct of TANAKA or the underlying problems related to the use of force by LASD deputies.

69.    The actions and inactions of BACA, TANAKA and DOES 1Through 10, inclusive as stated above are a moving force behind the shooting of decedent and a cause of the damages and harm alleged herein.

70.    Plaintiff is informed and believes and thereon alleges that in 2011, LASD's own records documented that the Century Station consistently had the highest numbers of shootings of any station over the period of 1996 to 2011, nearly

-18-

double the number of incidents as at the second-most-violent LASD station. Century Station deputies were involved in approximately one-fifth of all deputy-involved hit and non-hit shootings of LASD's approximately 11,000 members over the past 15 years, a trend that is also true of the six years preceding the shooting. Century Station maintains the highest number of shooting incidents of any LASD station, even as homicide and violent crimes have decreased. Defendants BACA, TANAKA and DOES 11 THROUGH 10, inclusive were aware or should have been aware of these statistics.

71.     Plaintiff is informed and believes and thereon alleges that Century Station had the largest number of deputies reporting multiple shootings as of the time of their most recent incident than any other station.  Approximately 56 percent of all shootings at Century Station, including half of all single-officer shooting incidents, involved at least one officer who had been involved in a prior shooting. Defendants BACA, TANAKA and DOES 1 THROUGH 10, inclusive were aware or should have been aware of these statistics.

72.     By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts described above, Defendants BACA, TANAKA and DOES 1 THROUGH 10, inclusive acted with an intentional, reckless, and callous disregard for the life of decedent, and decedent's and Plaintiff's constitutional rights.  The actions of BACA, TANAKA and DOES 1 THROUGH 10, inclusive were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

73.     By reason of the aforementioned acts and omissions, the Plaintiff was caused to incur loss of financial support.

74.     By reason of the aforementioned acts and omissions, the Plaintiff has suffered loss of decedent's love, companionship, affection, comfort, care, society, and future support.

-19-

75.    Accordingly, BACA, TANAKA and DOES 1 THROUGH 10, inclusive are liable to Plaintiff for compensatory damages under 42 U.S.C. § 1983.

### FIFTH CLAIM FOR RELIEF

### Municipal Liability for Unconstitutional Custom, Policy, or Practice

### (42 U.S.C. § 1983)

(Against Defendant COUNTY)

76.    Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 75 of this Complaint with the same force and effect as if fully set forth herein.

77.    On and prior to the shooting of decedent, the COUNTY, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of Plaintiff and decedent, and of persons in their class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

       (a)    Encouraging, accommodating, or facilitating shootings of unarmed citizens; the use of excessive and unreasonable force, including deadly force; and other misconduct;

       (b)    Encouraging, accommodating, or facilitating criminal and violent deputy gangs such as the "Regulators" and the "Vikings," which were permitted to run amok with impunity and without accountability;

       (c)    Threatening to retaliate against and retaliating against individuals within Defendant COUNTY and the LASD who criticized the use of excessive force by LASD deputies and sought to correct the above problems.

-20-

(d) Encouraging, accommodating, or facilitating a "code of silence" among LASD deputies and supervisors, pursuant to which false reports were generated and excessive and unreasonable force was covered up.

(e) Employing and retaining, as police officers and other personnel, individuals such as defendants DOES 1 THROUGH 10, inclusive, BACA, and TANAKA who Defendants COUNTY at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens;

(f) Inadequately supervising, training, controlling, assigning, and disciplining COUNTY sheriffs, and other personnel, including defendants DOES 1 THROUGH 10, inclusive, BACA, and TANAKA, who Defendant COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

(g) By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling intentional misconduct by COUNTY police officers, including defendants DOES 1 THROUGH 10, inclusive.

(h) By failing to discipline LASD sheriffs for misconduct, including, but not limited to, unlawful detention, excessive force and false reports;

(i) By ratifying the intentional misconduct of LASD deputies, including defendants DOES 1 THROUGH 10, inclusive; and

(j) By having and maintaining an unconstitutional policy, custom, and practice of detaining and arresting individuals without

-21-

probable cause or reasonable suspicion, and using excessive
force, including deadly force, facilitated by inadequate training
regarding these subjects;

(k)   By having and maintaining an unconstitutional policy, custom,
and practice of covering up unlawful shootings by COUNTY
police officers, including by bullying, threatening, and
intimidating witnesses and confiscating, mishandling,
manipulating, and destroying evidence.

78.   Plaintiff is informed and believes and thereon alleges that LASD deputies further have a custom and practice of falsifying police reports of officer-involved shootings, including by fabricating claims that the victim was "reaching for his waistband" at the time of the shooting. One recent study of Los Angeles sheriff's deputies found that many as half of recent "waistband shootings" involved citizens who were unarmed.[1]

79.   By reason of the aforementioned customs, policies and practices, decedent was severely injured and subjected to pain and suffering and lost his life.

80.   Defendant COUNTY, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above.  Despite having knowledge as stated above these defendants condoned, tolerated and through actions and inactions thereby ratified such policies.  Said defendants also acted with

---

[1] See, e.g., Robert Faturechi, *L.A. County deputies' shootings of unarmed people raise concerns*, Los Angeles Times, Sept 22, 2011 ("Almost half of all people shot at by Los Angeles County sheriff's deputies after they reached for their waistbands turned out to be unarmed, according to a study . . . analyzing six years of shooting data.").

-22-

COMPLAINT FOR DAMAGES

1   deliberate indifference to the foreseeable effects and consequences of these policies
2   with respect to the constitutional rights of decedent, Plaintiff, and other individuals
3   similarly situated.

4       81.   The policies, practices, and customs implemented and maintained and
5   still tolerated by Defendant COUNTY were affirmatively linked to and were a
6   significantly influential force behind the injuries of decedent and Plaintiff.

7       82.   By reason of the aforementioned acts and omissions loss of financial
8   support.

9       83.   By reason of the aforementioned acts and omissions, the Plaintiff has
10  suffered the loss of decedent's love, companionship, affection, comfort, care,
11  society, and future support.

12      84.   Accordingly, Defendant COUNTY is liable to Plaintiff for
13  compensatory damages under 42 U.S.C. § 1983.

14

15                    **SIXTH CLAIM FOR RELIEF**
16      **Battery (Cal. Govt. Code § 820 and California Common Law)**
17                         (Wrongful Death)
18        (Against Defendants DOES 1 THROUGH 10 and COUNTY)

19      85.   Plaintiff repeats and re-alleges each and every allegation in
20  paragraphs 1 through 84 of this Complaint with the same force and effect as if fully
21  set forth herein.

22      86.   Defendant DOE 1, while working as a police officer for the COUNTY
23  police department, and acting within the course and scope of her duties,
24  intentionally shot decedent multiple times.  As a result of these actions, decedent
25  suffered severe pain and suffering and ultimately died from his injuries and lost
26  earning capacity.  Defendant DOE 1 had no legal justification for using force against
27  decedent and the use of force was excessive and unreasonable.

28                              -23-

87.     As a direct and proximate result of defendants' conduct as alleged above, Plaintiff has suffered extreme and severe mental anguish and pain and has been injured in mind and body.  Plaintiff also has been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of decedent, and will continue to be so deprived for the remainder of her natural lives.  Plaintiff also claims a loss of financial support.

88.     Defendants DOES 2 THROUGH 10, inclusive, integrally participated in or failed to intervene in the above actions of Defendant DOE 1.

89.     The COUNTY is vicariously liable for the wrongful acts of Defendants DOES 1 THROUGH 10, inclusive pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to liability.

90.     The conduct of Defendants DOES 1 THROUGH 10, inclusive was malicious, wanton, and oppressive, and was accomplished with a conscious disregard for the rights of Plaintiff and decedent, entitling Plaintiff, individually and as successor-in-interest to decedent, to an award of exemplary and punitive damages.

### SEVENTH CLAIM FOR RELIEF

**Negligence (Cal. Govt. Code § 820 and California Common Law)**

(Against All Defendants)

91.     Plaintiff repeats and re-alleges each and every allegation in paragraphs 1 through 90 of this Complaint with the same force and effect as if fully set forth herein.

-24-

COMPLAINT FOR DAMAGES