**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| K.C.R., a minor child, et al., | Case No. CV 13-3806 PSG (SSx) |
| Plaintiffs, | **ORDER DENYING PLAINTIFFS' RENEWED REQUEST FOR AN ORDER REQUIRING DEFENDANT TANAKA TO SUPPLEMENT HIS RESPONSES TO PLAINTIFFS' AMENDED REQUESTS FOR ADMISSION** |
| v. | |
| COUNTY OF LOS ANGELES, et al., | |
| Defendants. | **(Dkt. Nos. 91-92)** |

**I.**

**INTRODUCTION**

On May 7, 2014, Defendants filed a "Motion for Protective Order Pursuant to Federal Rule of Civil Procedure 26(c) Barring the Deposition of Former High-Ranking Official Paul Tanaka." (Dkt. No. 67). On May 28, 2014, Plaintiffs filed an "Ex Parte Application to Shorten Time for Hearing Plaintiff K.R.'s Motion re Sufficiency of Defendant Tanaka's Objections to RFAs" ("Appl."). (Dkt. No. 70). On June 3, 2014, the Court held a

hearing on the Parties' respective Motions, which the Court explained were intertwined to the extent that Plaintiffs' purported need to depose Tanaka depended in part on Tanaka's responses to written discovery. On June 5, 2014, the Court granted Plaintiffs' Ex Parte Application to Shorten Time, but denied without prejudice the underlying motion to compel supplemental RFA responses and Defendants' motion for protective order. (Dkt. No. 77). The Court also granted Plaintiffs an opportunity to propound additional, tailored discovery requests on Tanaka, stating:

> Plaintiffs are cautioned that if their discovery requests are not specifically tailored to the kind of information Tanaka may be reasonably expected to have, the Court may find that Plaintiffs do not have a critical need for Tanaka's deposition because they cannot identify unique information material to the litigation likely to be in his possession. Defendants are cautioned that if Tanaka's responses and objections to written discovery appear intended to evade Tanaka's obligation, as a party to this case, to provide all the information that is required by the Federal Rules, the Court may find that a deposition is necessary.

(Id. at 15).

1        Pursuant to the Court's Order, on June 10, 2014, Plaintiffs
2   lodged with the Court a copy of their Amended RFAs.  (Dkt. No.
3   78).   On June 25, 2014, Defendants lodged a copy of Tanaka's
4   responses to the Amended RFAs.  (Dkt. No. 83).   On July 1, 2014,
5   Defendants filed a "Status Report regarding Tanaka Discovery" in
6   which they stated that "Defendants consider all discovery issues
7   pertaining to Defendant Tanaka to be resolved without the need
8   for his deposition or further involvement by the Court."  (Dkt.
9   No. 86 at 2).   Also on July 1, 2014, Plaintiffs filed their
10  Status Report, which they docketed as a "Motion to Take
11  Deposition of Paul Tanaka."  (Dkt. No. 91).   On July 6, 2014,
12  Plaintiffs filed a Notice of Errata in which they acknowledged
13  that the inclusion of a hearing date on the caption of the July 1
14  Status Report was an error.[1]  (Dkt. No. 92 at 1).   Despite this
15  acknowledgment, however, Plaintiffs also stated that "in the
16  interest of efficiency and since the Court has offered to that
17  [sic] the parties could contact the Court by telephone; it is
18  expedient for the Court to hear this matter [regarding discovery
19  relating to Tanaka] on Tuesday, July 8, 2014, as it has been
20  fully briefed."  (Id. at 2).   According to Plaintiffs, "the issue
21  remains that Defendant Tanaka a) failed to provide competent
22  responses to the [amended] discovery, and b) where he responds,
23  the response indicates that he is the only person to have
24  knowledge about the discovery propounded -- both responses
25  indicating that his deposition is necessary."  (Id.).

26  ───────────────
[1] Plaintiffs docketed their Notice of Errata as an "Amendment to
27  Motion for Protective Order for Barring the Deposition of Former
    High-Ranking Official Paul Tanaka IN OPPOSITION [sic]."  (Dkt.
28  No. 92).

On July 8, 2014, the Court held a hearing.  For the reasons stated below and on the record at the hearing, Plaintiffs' renewed request for an Order requiring Defendant Tanaka to supplement his responses to Plaintiffs' Amended Requests for Admission is DENIED.

## II.

## BACKGROUND FACTS

On June 21, 2012, after a 911 call reported an attack on a teenage girl, Los Angeles County Sheriff's Department ("LASD") Deputy Norma Silva, who responded to the scene, shot and killed Kenneth Rivera as he was walking toward her patrol car. (Consolidated First Amended Complaint ("FAC"), Dkt. No. 60 at 7). Rivera's children and father subsequently brought the instant action for excessive force and wrongful death against the County of Los Angeles, and, in their individual capacity, Deputy Silva and former LASD Undersheriff Paul Tanaka.  (Id. at 3). Plaintiffs contend that Tanaka wrongfully "encouraged deputies to use excessive or unreasonable force" and "threatened retaliatory investigations and discipline against captains and supervisors who attempted to investigate deputy misconduct."  (Id. at 18). In particular, Plaintiffs allege that Tanaka gave a speech at Century Station, where Silva would later be based, in which he encouraged deputies to "'function right to the edge of the line' and be very aggressive in using force against citizens." (Id. at 14).

**III.**

**STANDARDS**

**A.   Scope Of Permissible Discovery**

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense -- including the existence, description, nature, custody, condition, and location of any documents or other tangible things." Fed. R. Civ. P. 26(b)(1).  Relevancy is construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any issue that is or may be in the case."  Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 619 (S.D. Ind. 2002) (internal quotations omitted).  Even when information is not directly related to the claims or defenses identified in the pleadings, the information still may be relevant to the broader subject matter at hand and meet the rule's good cause standard.  Sanyo Laser Prods. Inc. v. Arista Records, Inc., 214 F.R.D. 496, 502 (S.D. Ind. 2003); see also E.E.O.C. v. Jewel Food Stores, Inc., 231 F.R.D. 343, 349-50 (N.D. Ill. 2005) ("[T]he concept of relevance is different for purposes of discovery than for admissibility at trial . . . .").

However, the right to discovery, even plainly relevant discovery, is not limitless.  "A court can limit discovery if it determines, among other things, that the discovery is: (1) unreasonably cumulative or duplicative; (2) obtainable from another source that is more convenient, less burdensome, or less

expensive; or (3) the burden or expense of the proposed discovery outweighs its likely benefit." Favale v. Roman Catholic Diocese of Bridgeport, 235 F.R.D. 553, 558 (D. Conn. 2006) (internal quotation marks omitted). "The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." Id. (internal quotation marks omitted). The party resisting discovery bears the burden of demonstrating that its objections should be sustained. Id.

**B.    Requests For Admission**

Federal Rule of Civil Procedure 36(a) provides:

A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1). Unlike interrogatories, document production requests, and depositions, requests for admission "are not a discovery device at all, 'since [they] presuppose[] that the party proceeding under [Rule 36] knows the facts or has the document and merely wishes its opponent to concede their genuineness.'" Pasternak v. Dow Kim, 2011 WL 4552389 at *5 (S.D.

N.Y. Sept. 28, 2011) (quoting 8B Wright, Miller, & Marcus, Federal Practice and Procedure § 2253 at 324); see also Safeco of America v. Rawstron, 181 F.R.D. 441, 445 (C.D. Cal. 1998) ("Requests for admissions are not principally discovery devices . . . and they are not to be treated as substitutes for discovery processes to uncover evidence . . . .") (internal citation and quotation marks omitted). Instead, the purpose of requests for admission is to narrow the issues for trial by identifying and eliminating those matters on which the parties agree. Id. at 443; see also Asea, Inc. v. Southern Pacific Transportation Co., 669 F.2d 1242, 1245 (9th Cir. 1981) ("The purpose of Rule 36(a) is to expedite trial by establishing certain material facts as true and thus narrowing the range of issues for trial."); Fed. R. Civ. P. 36 advisory committee notes (1970 Amendment) ("Rule 36 serves two vital purposes, both of which are designed to reduce trial time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."); Berry v. Federated Mut. Ins. Co., 110 F.R.D. 441, 443 (N.D. Ind. 1986) (Rule 36 is an appropriate tool for establishing before trial the genuineness and authenticity of anticipated exhibits).

The Rule provides that the matter is deemed admitted unless the responding party serves a written answer or objection within thirty days of service of the request. Fed. R. Civ. P. 36(a)(3). If the matter is not admitted, the answer must specifically deny the matter or set forth in detail the reasons why the answering

party cannot truthfully admit or deny the matter.  Id. 36(a)(4).
Because requests for admission also clarify which issues are
"genuinely contested," where issues in dispute "are requested to
be admitted, a denial is a perfectly reasonable response."
United Coal Companies v. Powell Const. Co., 839 F.2d 958, 967
(3rd Cir. 1988).   However, "[i]f the party requesting the
admission later proves the genuineness of the document or the
truth of the matter requested, the court may order the party that
denied the request to pay the costs of her opponent in making
that proof."   Ballard, Spahr, Andrews & Ingersoll, LLP, 243
F.R.D. 1, 7 (D. D.C. 2007) (citing Fed. R. Civ. P. 37(c)(2)).  If
an objection is made in lieu of an admission or denial, the
responding party must state the reasons for the objection.  Fed.
R. Civ. P. 36(a)(5).   If the court finds that a party has not
provided a proper objection, the court may either find the matter
admitted or order that an amended answer be served.     Id.
36(a)(6).

    Where requests for admission do not narrow the range of
issues for trial but are "'unreasonably cumulative' and
'duplicative' of other discovery taken in the case, the requests
do not serve the purpose of Rule 36(a)" and are properly subject
to objection.   Caruso v. Coleman Co., 1995 WL 347003 at *2 (E.D.
Pa. June 07, 1995).  For example, "[a] request for admission as
to whether or not a particular witness testified to certain
information at a deposition is duplicative of the deposition
itself" and may properly be objected to on that ground.  Id.; see
also Van Wagenen v. Consolidated Rail Corp., 170 F.R.D. 86, 87

(N.D. N.Y. 1997) (requests for admission that "simply restate sentences" from a previously authenticated document are "unreasonably duplicative and cumulative"); Workman v. Chinchinian, 807 F. Supp. 634, 648 (E.D. Wash. 1992) (requests for admission asking party to admit that a letter contained certain statements improper where the party had already admitted the authenticity of the letter and "the only purpose served by the admission would be to bolster the effect of the letter in attacking [the letter writer's] credibility"); Rios v. Tilton, 2010 WL 3784703 at *7 (E.D. Cal. Sept. 24, 2010) (requests for admission asking party to admit "authenticity of quoted portions" of California Code and Department Operations Manual "impermissible in scope and unduly burdensome"). In addition, "requests for admission should not be used to establish 'facts which are obviously in dispute,' Lakehead Pipe Line Co. v. American Home Assur. Co., 177 F.R.D. 454, 458 (D. Minn. 1997), to 'demand that the other party admit the truth of a legal conclusion,' even if the conclusion is 'attached to operative facts,' or to ask the party to admit facts of which he or she has no special knowledge." Tuvalu v. Woodford, 2006 WL 3201096 at *7 (E.D. Cal. Nov. 2, 2006) (quoting Disability Rights Council v. Wash. Metro. Area, 234 F.R.D. 1, 3 (D.C. Cir. 2006)).

# IV.

## DISCUSSION

Plaintiffs served twenty-five Amended Requests for Admission on Tanaka.  The Court finds that Tanaka's responses satisfied his obligations under the Federal Rules and do not require supplementation.

Tanaka admitted four RFAs without qualification (RFA Nos. 5, 8, 12, 20) and another eight RFAs with qualification (RFA Nos. 3, 4, 15, 16, 19, 21, 23, 25).  A party responding to requests for admission should endeavor "in good faith [to] frame an intelligent reply." U.S. ex rel. Englund v. Los Angeles County, 235 F.R.D. 675, 685 (E.D. Cal. 2006).  If a request is potentially ambiguous or only partially true from the responding party's perspective, the party should "'admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted.'" Id. (quoting Marchand v. Mercy Medical Center, 22 F.3d 933, 938 (9th Cir. 1994)).  Tanaka's qualified admissions satisfy that standard.  RFA No. 3 asked Tanaka to admit that he was "a member of the 'Vikings' deputy group that tattooed the insignia of the 'Vikings' on their (your) body."  Tanaka appears to challenge the contention that "there was [such a thing as] a 'membership' in the 'Vikings,'" (see RFA No. 6), but admitted in his response that he has a "Vikings" tattoo.  RFA No. 4 asked Tanaka to admit that he "continued to wear the 'Vikings' tattoo insignia" when he gave speeches in June 2007.  Tanaka's response, apparently addressing the possibility

that the "Vikings" insignia could encompass items of clothing or jewelry in addition to tattoos, clarified that he still had a "Vikings" tattoo at that time. Tanaka's responses to RFA Nos. 15 and 16 were admissions that Tanaka made certain statements, but clarified that his statements were not intended to encourage illegal behavior. Similarly, Tanaka admitted that the document at issue in RFA No. 19 was genuine, but noted that the information in the document was not correct. Finally, Tanaka's responses to RFA Nos. 21, 23 and 25 were also admissions that affirmed the substance of the RFAs, albeit in slightly different phrasing. All of Tanaka's qualified admissions conform to the Federal Rules.

Tanaka denied ten RFAs (RFA Nos. 1, 2, 7, 11, 13, 14, 17, 18, 22, 24). It is unclear whether Plaintiffs are challenging these denials. As a general rule, a denial is an appropriate response when a responding party believes that the statement at issue in a request for admission is untrue. United Coal Companies, 839 F.2d at 967. Furthermore, Tanaka explained the basis for each of his denials in his response to Amended Interrogatory No. 1. Tanaka's denials conform to the Federal Rules.

Tanaka stated that he lacked sufficient information to respond to two RFAs (RFA Nos. 6, 10). "[A] party may not refuse to admit or deny a request for admission based upon a lack of personal knowledge if the information relevant to the request is reasonably available to him." Asea, Inc., 669 F.2d at 1245.

1    Accordingly, "Rule 36 requires the responding party to make a
2    reasonable inquiry, a reasonable effort, to secure information
3    that is readily obtainable from persons and documents within the
4    responding party's relative control and to state fully those
5    efforts." A. Farber & Partners, Inc. v. Garber, 237 F.R.D. 250,
6    254 (C.D. Cal. 2006) (internal quotation marks omitted).

7

8        RFA No. 6 asked Tanaka to admit that "members of the
9    'Vikings' were located at the Lynwood Station in approximately
10   1987 through 1991." In his response, Tanaka explained that he
11   believes that there was no such a thing as "a 'membership' in the
12   'Vikings.'" It therefore appears that further inquiry would be
13   fruitless. RFA No. 10 asked Tanaka to admit the genuineness of
14   an article published by the Los Angeles Times in 1990. Pursuant
15   to Federal Rule of Evidence 902(6), newspaper articles are self-
16   authenticating and "require no extrinsic evidence of authenticity
17   in order to be admitted." Fed. R. Evid. 902(6). Accordingly, no
18   further response to RFA No. 10 is required.

19

20       Tanaka objected to only one RFA in its entirety. RFA No. 9
21   asked Tanaka to admit that "a Long Beach police officer who
22   witnessed the [Hong Pyo Lee] shooting told investigators he 'just
23   observed the sheriffs execute somebody.'" Tanaka objected on the
24   grounds that the Request "is not reasonably calculated to lead to
25   the discovery of admissible evidence, violates the best evidence
26   rule, and is vague and ambiguous." The Court agrees. First, it
27   appears unlikely that a statement concerning a shooting by police
28   officers with no involvement in the events at issue in this case

that occurred in 1988 will lead to evidence bearing on Silva's decision to shoot Rivera in 2012.  Second, the Request is vague and ambiguous as it is not clear from the Request who the Long Beach police officer is, when and where he allegedly stated that he had witnessed an "execution," and the context in which he said it.  As such, Tanaka's objections to RFA No. 9 are sustained.

**V.**

**CONCLUSION**

The Court is satisfied that Tanaka fulfilled his obligations under the Federal Rules in his responses to Plaintiffs' amended discovery requests.  Accordingly, Plaintiffs' renewed request for an order compelling Tanaka to supplement his responses to Plaintiffs' Amended Requests for Admission is DENIED.

IT IS SO ORDERED.

DATED:  July 14, 2014

                                    /S/
                        SUZANNE H. SEGAL
                        UNITED STATES MAGISTRATE JUDGE